**ROBERT YU LLC**
Attorneys & Counselors At Law
158 Linwood Plaza – Suite 211
Fort Lee, New Jersey 07024
(201) 592-0929
(888) 244-0987 (Fax)
Email: Ryu@RobertYuLLC.com
Attorneys for Third-Party Defendant, Geoffrey Allen Corporation

| | |
|---|---|
| PEI LICENSING, INC., <br><br> Plaintiff, <br><br> - against – <br><br> DI-MED INTERNATIONAL INC.; ANGIE'S SHOES AND LEATHER GOODS, INC.; JOHN DOES 1-10; JANE DOES 1-10; AND XYZ COMPANIES 1-10, <br><br> Defendants. | UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK <br> CIVIL ACTION NO. 11-0153 (JBW) (RML) |
| ANGIE'S SHOES AND LEATHER GOODS, INC., <br><br> Third-Party Plaintiff, <br><br> - against – <br><br> GEOFFREY ALLEN CORPORATION, <br><br> Third-Party Defendant. | |

**REPLY IN SUPPORT OF THE MOTION OF THIRD-PARTY DEFENDANT GEOFFREY ALLEN CORPORATION TO AMEND ITS ANSWER TO THE THIRD-PARTY COMPLAINT TO ASSERT A COUNTERCLAIM AND TO FILE A SECOND THIRD-PARTY COMPLAINT**

                                                **ROBERT YU LLC**
                                                Attorneys for Third-Party Defendant,
                                                Geoffrey Allen Corporation

**PRELIMINARY STATEMENT**

Third-Party Defendant Geoffrey Allen Corp ("GAC"), respectfully submits this reply in further support of its motion ("GAC's Motion to Amend"), for leave to amend its Answer to the Third-Party Complaint of Defendant/Third-Party Plaintiff Angie's Shoes and Leather Goods, Inc. ("Angie's"), to assert a Counterclaim against Angie's and to file a Second Third-Party Complaint against non-party John Kim a/k/a Jang H. Kim ("John Kim") (the "Proposed Amendment"), and in response to Angie's opposition to GAC's Motion to Amend.

GAC's motion to Amend should be granted because GAC's Proposed Amendment is not futile, nor is it unfair or unduly prejudicial to Angie's.

GAC's Proposed Amendment is not futile because the claims that GAC is seeking to assert are already substantially supported by the documents previously exchanged in discovery. As set forth in GAC's initial moving papers, discovery has revealed that, contrary to the allegations contained in Angie's Third-Party Complaint, Angie's knew or should have known that its purchase of the Unauthorized Shoes was not - - and could not have been - - authorized and/or approved by GAC. Rather, the record demonstrates that only three of the twenty (or more) total transactions identified thus far in discovery, whereby Angie's purchased Perry Ellis shoes, were authorized (the "Authorized Transactions"). GAC was not in any way involved in the remaining seventeen (or more) unauthorized transactions (the "Unauthorized Transactions"). Instead, Angie's, with the assistance of a rogue, former GAC employee, John Kim, purchased the Unauthorized Shoes directly from China from Capo Shoes, a third-party unaffiliated with GAC, at a reduced price and in a manner that was completely inconsistent with the standard operating procedure observed in connection with the three Authorized Transactions.

GAC had no means to discover earlier the basis for the claims that it is now seeking to assert against Angie's and John Kim because GAC did not know about the Unauthorized

Transactions until Angie's filed its third-party complaint against GAC. Even then, Angie's had no documents relating to the Unauthorized Transactions other than the incomplete and self-serving information produced by Angie's in discovery exchanged in connection with this lawsuit. Moreover, due to an extensive turn-around of GAC personnel, it has been difficult for GAC to piece together from the limited information provided by Angie's the scope and nature of Angie's conspiracy with John Kim relating to the Unauthorized Transactions. Compounding GAC's difficulty in this regard, Randy Scurlock, GAC's representative who is (and who has been) serving as the point man interacting with GAC's legal counsel in connection with this matter, suffered from serious health issues that unavoidably delayed the development of the claims that GAC is now seeking to assert in its Proposed Amendment. As a result, GAC only began to discover the basis for its Proposed Amendment during the mediation that occurred in January 2013.

In these circumstances, Angie's should not be heard to complain that the proposed amendment is unfair and/or unduly burdensome to Angie's, especially in light of the procedural history and current posture of this case. Specifically, at this time, no depositions have been conducted. In fact, GAC was required to file a motion to compel discovery due to Angie's failure to produce representatives for depositions. Moreover, the information that will be relevant and probative to the claims that GAC is seeking to assert in its Proposed Amendment is the same information that is relevant and probative to GAC's existing defenses, to Plaintiff's claims against, Angie's and also to Angie's claims against GAC.

Angie's first asserted during mediation that GAC should be vicariously liable based on the actions of one of GAC's former, rogue employees: John Kim. Angie's theory of liability appears to be that John Kim had authority to act on behalf of GAC in connection with the Unauthorized

Transactions. GAC denies that John Kim was acting on GAC's behalf, and/or within the scope of his employment with GAC, if and when he facilitated Angie's Unauthorized Transactions. Now, Angie's opposition to GAC's present motion seeks to prohibit GAC from asserting claims against Angie's and/or John Kim for their misconduct in connection with the Unauthorized Transactions, and the resulting damages sustained by GAC. This type of "empty chair offense" disingenuously seeks to permit Angie's to attribute liability to GAC, while, at the same time, unfairly depriving GAC of the opportunity to assert affirmative claims that are logically and unavoidably derived from Angie's own account of what transpired.

In other words, before liability for the Unauthorized Transactions can be properly allocated between the parties, a determination must be made as to how the Unauthorized Transactions were accomplished, and who was involved in the Unauthorized Transactions. Essential to this determination is the resolution of whether GAC had any involvement (as Angie's alleges) in the Unauthorized Transactions, or, alternatively, if Angie's in fact secretly made the Unauthorized Transactions without GAC's knowledge or participation (as GAC alleges).

Further, Angie's only as recently as May 10, 2013, produced new evidence bearing on the claims GAC is seeking to assert in its Proposed Amendment, and GAC on June 12, 2013 made its own supplemental document production that may also shed light on what has occurred. Still further, mediation occurred only as recently as January 2013, at which time Angie's clarified its position with respect to the Unauthorized Transactions.

Therefore, good cause exists to permit GAC to amend its answer to assert Counterclaims and a Second Third-Party Complaint because discovery has revealed a basis for these claims, and because Angie's and John Kim will not be unduly prejudiced by the Proposed Amendment.

### RESPONSE TO ANGIE'S FACTUAL CONTENTIONS

**1. The Transactions In Question.**

Angie's asserts in its opposition to GAC's Proposed Amendment that from 2005 to 2007, there were approximately twenty transactions by which Angie's purchased Perry Ellis brand shoes from or with the assistance of GAC. (*See* **Angie's Opposition Brief at p. 2**) Angie's has provided two different versions of a list of these transactions during the course of discovery. (*See* **June 12, 2013 Declaration of Randy Scurlock ("Scurlock Declaration") at ¶ 2**) A copy of both versions of Angie's list of purchases of Perry Ellis brand shoes is attached collectively to the Scurlock Declaration as **Exhibit A**. Curiously, both of Angie's versions of this list, despite a number of variations, identify more than twenty transactions. (***Id.* at ¶ 3**) GAC only has independent records for three of these transactions, i.e., the Authorized Transactions. (***Id.***)

**2. The Authorized Transactions**

All three of these Authorized Transactions are set forth on both of Angie's versions of the list, and consist of the following:

1. An April 28, 2006 transaction involving 888 pairs of Perry Ellis shoes;

2. A May 3, 2006 transaction involving 4,752 pairs of Perry Ellis shoes; and

3. A June 19, 2006 transaction involving 5,760 pairs of Perry shoes.

The only independent records that GAC has relating to any transactions involving Angie's purchase of Perry Ellis brand shoes relate to these three Authorized Transactions; GAC's documents reflecting these three Authorized Transactions are attached to the Scurlock Declaration as **Exhibit B**.

Significantly, and not coincidentally, Plaintiff, in its answers to interrogatories, has identified these same three Authorized Transactions as having been "authorized" because GAC

5

reported them to Plaintiff, and because GAC paid Plaintiff any required royalty. (*Id.* at ¶ 6) Therefore, these three Authorized Transactions are unrelated to the claims raised by Plaintiff against Angie's in this lawsuit. (*Id.*) A copy of the relevant portion of Plaintiff's answers to interrogatories is attached to the Scurlock Declaration as **Exhibit C**.

### 3. The Unauthorized Transactions.

Angie's has produced literally hundreds of pages of documents relating to the Unauthorized Transactions, including, without limitation, copies of purchase orders, wire transfers, letters of credit, commercial invoices, correspondence, etc. (*Id.* at ¶ 7) Copies of a small sampling of these documents are attached collectively to the Scurlock Declaration as **Exhibit D**.

These documents indicate that Angie's purchased Perry Ellis brand shoes directly from China from a former agent of GAC (i.e., Capo Shoes), in a manner that deviated from the procedure established by and between GAC and Angie's in connection with Authorized Transactions. (*Id.* at ¶ 8) The procedure established by and between GAC and Angie's in connection with the Authorized Transactions is evidenced by the documents attached to the Scurlock Declaration as **Exhibit B,** and also by the documents produced by Angie's relating to the Authorized Transactions, which are attached to the Scurlock Declaration as **Exhibit E.**

GAC never had any independent records relating to the Unauthorized Transactions precisely because Angie's and John Kim deliberately excluded GAC from participating in the Unauthorized Transactions. (*Id.* at ¶ 10)

### 4. Procedural Posture and Status of Discovery.

Contrary to Angie's assertions, GAC served all counsel of record with GAC's Rule 26(a)(1), Fed. R. Civ. P. initial disclosures on January 6, 2012. (*Id.* at ¶ 11) A copy of GAC's

initial disclosures and affirmation of service is attached to the Scurlock Declaration as **Exhibit F.** GAC also provided Angie's with copies of invoices relating to the Authorized Transactions even prior to the date on which Angie's filed its third-party complaint against GAC.  (***Id.* at ¶ 12)** Angie's, in turn, bates stamped these same invoices as ASLG – PEI 23 through 27, and produced them in discovery.  (***Id.***)  Copies of ASLG – PEI 23 through 27 are attached to the Scurlock Declaration as **Exhibit E**.

GAC's participation in this case was unavoidably impaired as a result of the serious health issues experienced by Randy Scurlock, who was GAC's point man interacting with GAC's legal counsel in connection with this matter.  (***Id.* at ¶ 13)**  GAC disclosed these concerns to the Court and to all counsel and secured a scheduling order accommodating the resulting unavoidable delays, which also delayed the development of the claims that GAC is now seeking to assert in its Proposed Amendment.  (***Id.* at ¶ 14)**  Copies of the Court's August 31, 2012 Scheduling Order is attached to the Scurlock Declaration as **Exhibit G.**

Significantly, no depositions have yet been conducted in this case.  (***Id.* at ¶ 15**)  As recently as May 10, 2013, Angie's produced a Declaration of First Express Logistics, Inc. ("First Express") dated April 24, 2013.  (***Id.***)  A copy of First Express's April 24, 2013 declaration is attached to the Scurlock Declaration as **Exhibit H.**

First Express's declaration indicates, among other things, that any payments made by Angie's to First Express in connection with the Unauthorized Transactions were credited against a pre-existing indebtedness that GAC purportedly owed to First Express.  (***Id.* at ¶ 16**)  In response, on or about June 10, 2013, GAC served First Express with a subpoena.  (***Id.* at ¶ 17**)  A copy of GAC's Subpoena to First Express is attached to the Scurlock Declaration as **Exhibit I.**

On June 12, 2013, GAC made a supplemental document production, which includes,

among other things, documents refuting First Express's contention that any payments made by Angie's to First Express in connection with the Unauthorized Transactions were credited against a pre-existing indebtedness that GAC purportedly owed to First Express.  (*Id.* at ¶ 18)  Copies of invoices from and corresponding payments to First Express, which refute the assertion of any pre-existing indebtedness, are included with GAC's supplemental document production**.**

Angie's first asserted during mediation that GAC should be vicariously liable based on the actions of one of GAC's former, rogue employees: John Kim.  (*Id.* at ¶ 19)  Angie's theory of liability appears to be that John Kim had authority to act on behalf of GAC in connection with the Unauthorized Transactions.  († at ¶ 20) GAC denies that John Kim was acting on GAC's behalf, and/or within the scope of his employment with GAC, if and when he facilitated Angie's Unauthorized Transactions.  (*Id.* at ¶ 21)  Now, Angie's opposition to GAC's present motion seeks to prohibit GAC from asserting claims against Angie's and/or John Kim for their misconduct in connection with the Unauthorized Transactions, and the resulting damages sustained by GAC.  (*Id.* at ¶ 22)  Unless GAC is permitted to file its Proposed Amendment, GAC will be unfairly prevented from asserting affirmative claims that are logically and unavoidably derived from Angie's own account of what transpired. (*Id.* at ¶ 23)

5.  **GAC's Standard Operating Procedure**

The standard operating procedure that is described in GAC's initial moving papers is consistent with the documents that relate to the three Authorized Transactions.  (*Id.* at ¶ 24) This is the standard operating procedure that GAC and Angie's followed in connection with the Authorized Transactions, and which GAC and all of its customers followed in connection with any transactions relating to the purchase of any apparel.  (*Id.*) There are no records that indicate that GAC reported the Unauthorized Transactions to Plaintiff, or that GAC paid royalties to

8

Plaintiff in connection with the Unauthorized Transactions, precisely because GAC was never involved in the Unauthorized Transactions. (***Id.* at ¶ 25**) GAC was never involved in the Unauthorized Transactions only due to the misconduct of Angie's and John Kim, which is the basis of the claims that GAC is seeking to assert in its Proposed Amendment. (***Id.***)

The misconduct of Angie's and John Kim includes, without limitation, the fact that Angie's conspired with John Kim to deliberately cut GAC out of the ordering and payment process; thereby enabling Angie's to pay significantly less money for the Unauthorized Shoes than the price that Angie's would have had to pay to GAC for Authorized Shoes, thereby causing GAC to suffer damages. (***Id.* at ¶ 26**)

## **ARGUMENT**

### POINT I

### GAC SHOULD BE GRANTED LEAVE TO FILE AN AMENDED ANSWER TO ASSERT A COUNTERCLAIM AGAINST ANGIE'S AND A SECOND THIRD-PARTY COMPLAINT AGAINST JOHN KIM BASED UPON NEWLY DISCOVERED CULPABLE CONDUCT

Leave to amend should be granted unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility. See *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001). Although Fed. R. Civ. P. 15(a) generally governs the amendment of pleadings, where the proposed amendment seeks to add new parties, Fed. R. Civ. P. 21 governs. *Rush v. Artuz*, 00CIV3436, 2001 U.S. Dist. LEXIS 17480, 2001 WL 1313465, at *5 (S.D.N.Y. Oct. 26, 2001). Rule 21 states that "[p]arties may be . . . added by order of the court on motion of any party . . . at any stage of the action and on such terms as are just." Fed. R. Civ. P. 21. "In deciding whether to allow joinder, the Court is guided by the same standard of liberality afforded to motions to amend pleadings under Rule 15." *Rush*, 2001 U.S. Dist. LEXIS 17480, 2001 WL 1313465, at *5 (internal quotation omitted); *see Clarke v. Fonix Corp.*, 98 CIV 6116, 1999 U.S. Dist. LEXIS 2143, 1999 WL 105031, at *6 (S.D.N.Y. March 1, 1999), *aff'd* 199 F.3d 1321 (2d Cir. 1999).

**A. GAC's Proposed Amendment Is Not Futile.**

To determine whether an amended claim is futile**,** courts analyze whether the proposed pleading would withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Application of this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

Pursuant to Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678, *quoting Twombly,* 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Id., quoting Twombly,* 550 U.S. at 555.

Angie's opposition meritlessly contends that GAC's Proposed Amendment is futile because there are no facts in the record of this case that support the allegations in GAC's proposed counterclaim and second-third party complaint. **((*See* Angie's Opposition Brief at p. 1)** This contention willfully and inexplicably ignores the fact that Angie's itself has already produced literally hundreds of pages of documents relating to the Unauthorized Transactions, including, without limitation, copies of purchase orders, wire transfers, letters of credit, commercial invoices, correspondence, etc., relating to the Unauthorized Transactions (*See* sampling of relevant document attached to Scurlock Declaration as **Exhibit D),** which indicate that Angie's purchased Perry Ellis brand shoes directly from China from a former agent of GAC (i.e., Capo Shoes), in a manner that deviated from the procedure established by and between GAC and Angie's in connection with Authorized Transactions. (*See* **Scurlock Declaration at ¶**

11

8)

This alone is sufficient to support GAC's claims based upon the allegation that Angie's conspired with John Kim to deliberately cut GAC out of the ordering and payment process; thereby enabling Angie's to pay significantly less money for the Unauthorized Shoes than the price that Angie's would have had to pay to GAC for Authorized Shoes, and causing GAC to suffer damages. (*Id.* at ¶ 26) Moreover, at this stage of discovery, when not even one deposition has been conducted, it is premature for Angie's to argue that GAC has not produced sufficient documentary evidence to support its Proposed Amendment. GAC need not prove its claims in order to be entitled to assert them.

Further, Angie's contention that John Kim was acting within the scope of his employment in connection with his dealings with Angie's relating to the Unauthorized Transactions, thus (according to Angie's) subjecting GAC to liability, based upon principals of vicarious liability and respondeat superior, are fact sensitive issues, which do not warrant or justify denial of GAC's motion to file an amended pleading.

Therefore, GAC's Proposed Amendment is not futile, and good cause exists to permit GAC to amend its answer to assert a Counterclaim and a Second Third-Party Complaint because discovery has revealed a basis for these claims.

> **B. Angie's Has Not (And Cannot) Establish That It Will Be Unduly Prejudiced By GAC's Proposed Amendment.**

Federal Rule of Civil Procedure 15(a) does not bar, as a general matter, amendments to a complaint, *even after* the close of discovery. *Krys v. Aaron (In re Refco Secs. Litig.)*, 2013 U.S. Dist. LEXIS 69561. Courts may permit a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith. *Block v. First Blood Associates*, 988 F.2d 344, 350 (2d Cir. 1993). The Second Circuit has explained that the determination of "prejudice"

under Rule 15 entails a consideration of whether the new claim would: "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Id*. (internal citations omitted). However, a mere showing of delay, "absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." Id. (citing *Teachers Retirement Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)).

Here, GAC has not previously sought to amend its pleading, and GAC filed its Motion to Amend before the close of discovery. Nor is there is no basis to allege that Angie's or John Kim will be unduly prejudiced by the proposed amendment because no depositions have yet been conducted in this case. In fact, GAC was required to file a motion to compel discovery due to Angie's failure to produce representatives for depositions.

Moreover, the information that will be relevant and probative to the claims GAC is seeking to assert in its Proposed Amendment is the same information that is relevant to GAC's existing defenses, to Plaintiff's claims against, Angie's and also to Angie's claims against GAC. In fact, before liability for the Unauthorized Transactions can be properly allocated between the parties, a determination must first be made as to how the Unauthorized Transactions were accomplished, and who was involved in the Unauthorized Transactions, including resolution of the substance underlying the claims that GAC is seeking to asset in connection with its Proposed Amendment.

In these circumstances, there is no basis to contend that the Proposed Amendment is designed to, or would in fact, cause any undue delays. Therefore, GAC should be permitted to file an amended answer to Angie's Third-Party Complaint for the purpose of asserting a Counterclaim against Angie's and a Second Third-Party Complaint against John Kim.

## **CONCLUSION**

Based upon the foregoing, it is respectfully submitted that GAC's motion for an Order granting GAC leave to file an amended pleading should be granted in its entirety.

**ROBERT YU LLC**
Attorneys for Third-Party Defendant,
Geoffrey Allen Corporation

By: s/ A. Crew Schielke
      A. Crew Schielke

Dated: June 14, 2013